UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JON S. CORZINE, et al., | CIVIL ACTION NO. 05-4294 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| 2005 DEFENSE BASE CLOSURE & REALIGNMENT COMMISSION, et al., | |
| Defendants. | |

**COOPER, District Judge**

The plaintiffs brought this action on September 2, 2005, seeking, inter alia, a judgment declaring that the defendants violated the Defense Base Closure and Realignment Act ("BRAC") — 10 U.S.C § 2687, et seq. — by failing to remove the military base located at Fort Monmouth from the closure list, which was (1) compiled by the defendant Secretary of Defense Donald Rumsfeld ("the Secretary"), and (2) reviewed by the defendant 2005 Defense Base Closure & Realignment Commission ("the Commission"). (Compl., at 28-29.) The plaintiffs now seek to enjoin the Commission from transmitting its report on the Secretary's initial recommendations ("the Report") to the President of the United States. (Dkt. entry no. 6.) The Court will deny the application and dismiss the complaint for lack of subject matter jurisdiction.

## BACKGROUND

### I. The Parties

The plaintiffs — who are, among others, (1) elected officials from New Jersey, and (2) military personnel and their family members — (Compl., at 4-14) — seek to enjoin the Commission from transmitting the Report to the President.[1] They seek also an expedited trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2) to resolve the issues presented here. Specifically, they allege the Commission exceeded its statutory authority under BRAC in the following ways:

A. When the BRAC Commission conditioned closure of Fort Monmouth upon the Department of Defense's (DoD) implementation of unspecified safeguards to avoid degradation of current programs and disruption to the Global War on Terror, the Commission failed to fully approve or fully disapprove the Fort Monmouth recommendation. Such a "conditional closure" was not authorized or contemplated by the BRAC Act, and it runs counter to the BRAC Act's purpose of bringing clarity and finality to the base closure process.

B. When the BRAC Commission added an amendment to the "conditional closure" directing the Secretary of Defense to submit a report to the appropriate congressional oversight committee regarding the status of the aforementioned safeguards, it re-inserted Congress back into the base closure process in a way that was neither authorized nor contemplated by the BRAC Act. This, too, is directly contrary to the purpose of the BRAC Act,

[1] Richard J. Codey, Acting Governor of New Jersey, and the State of New Jersey filed an amicus curiae brief in support of the plaintiffs.

which went to great lengths to minimize Congressional involvement in the base closure process.

C. After the BRAC Commission found that the recommendation to close Fort Monmouth deviated substantially from six of the eight final criteria and the Force Structure Plan, it violated the BRAC Act when it did not recommend removal from the closure list. The BRAC statute does not contemplate conditional, "curative" changes that are essentially entirely new recommendations. Rather, where the BRAC Commission finds wholesale substantial deviation from the criteria and the Force Structure Plan, it is limited to the sole remedy of removal from the list. If, on the other hand, the BRAC Commission want[s] to add a base to the closure list, it must do so through the statutorily mandated "adds" procedure.

D. Lastly, even if BRAC Commission did not exceed the scope of its congressionally delegated conditional authority to "make changes" to DoD recommendations, it still violated the law because the changes recommended do not adequately address or substantively cure the statutory deficiencies of the recommendation.

E. The 2005 BRAC Act requires all recommendations to meet eight final criteria and comport with the DoD's Force Structure Plan. According to the BRAC Commission's findings and amendments, Secretary Rumsfeld's recommendation to include Fort Monmouth on the closure list violated final criteria 1, 2, 3, 4, 5 & 7 and failed to comport with the Force Structure Plan. By failing to comply with the BRAC Act's mandates, Secretary Rumsfeld violated the law. The result for Fort Monmouth was severe: had the Fort not been added to the closure list unlawfully by Secretary Rumsfeld, it would not otherwise have been considered for closure, since it was not place on the list via the BRAC Commission's "adds" process.

F. Section 2913(e) of the BRAC Act requires the Secretary of Defense to consider costs that will be

> incurred by other non DoD federal entities located on military installations slated for closure or realignment. Secretary Rumsfeld violated this provision of the law when he failed to follow this statutory mandate and consider the costs to the Veterans Administration, the FBI, and the Federal Emergency Management Agency (FEMA), all of which operate at Fort Monmouth.

(Pl. Br., at 18-19.) The plaintiffs assert jurisdiction pursuant to the federal question provision of 28 U.S.C. § 1331, the mandamus provision of 28 U.S.C. § 1361, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202.

The defendants, in response, contend that the plaintiffs have no likelihood of success on the merits because their claims "suffer from fatal justiciability flaws". (Def. Br., at 12.) They claim that the Court lacks subject matter jurisdiction — and thus is precluded from reviewing the Report — under the holding in Dalton v. Specter, 511 U.S. 462 (1994), and in light of the "text, structure, and purpose" of BRAC. Id. at 479.[2]

## II. BRAC

The process by which military bases are selected for closure and realignment is governed by BRAC. The purpose of BRAC is "to provide a fair process that will result in the timely closure and

---

[2] The defendants also argue that (1) there is no ripe controversy because the Report is a recommendation subject to possible rejection, (2) the plaintiffs lack standing as they have not alleged an actual injury, and (3) the challenges to the Secretary's recommendations to the Commission are moot. The Court will not address these arguments, as will become clear herein.

realignment of military installations inside the United States." 10 U.S.C § 2901.

The Secretary prepares first "[a] force-structure plan for the Armed Forces based on an assessment by the Secretary of the probable threats to the national security during the 20-year period beginning with fiscal year 2005." Id. at § 2912(a)(1)(A). The Secretary then reports on the infrastructure necessary to implement the plan. Id. at § 2912(a)(2). Based on this report, the Secretary certifies whether the need exists to close or realign military bases. Id. at § 2912(b)(1). The base-closure process terminates if the Secretary fails to provide such a certification. Id. at § 2912(b)(2). After this certification, the President must nominate eight people to serve as the "Defense Base Closure and Realignment Commission." Id. at § 2902. Failure to do so also terminates the closure process. Id. at § 2902(c)(1)(C).

The Secretary, assuming the required certification has been issued, must then recommend the bases to be closed and realigned. Id. at § 2914(a). Thereafter, the Commission holds public hearings on those recommendations. Id. at § 2903(d). After the hearings, under the current version of BRAC, the Commission must transmit a report "containing its findings and conclusions, based on a review and analysis of the Secretary's recommendations" to the President by September 8, 2005. Id. at § 2914(d)(1).

The President then reviews the Secretary's recommendations and the Commission's report of the Commission, and prepares a further report either approving or disapproving the Commission's recommendations. Id. at § 2914(e). If the President disapproves of the Commission's recommendations, the Commission has an opportunity to revise the list and resubmit it to the President. Id. at § 2903(e)(3). If the President does not transmit the revised report to Congress, the process is terminated for that year. If the President approves the revised list, it is passed on to Congress for approval. Id. at § 2903(e)(4)-(5). If Congress does not act on the report within 45 days of receiving it, or by the adjournment of Congressional session during which the report was transmitted, the Secretary must close and realign the military bases as provided in the Commission report approved by the President. Id. at § 2904(b). Both the President and Congress have no authority to pick and choose parts of the report to approve and disapprove. The report must be approved or disapproved as a single package.

**DISCUSSION**

The plaintiffs bear the burden of demonstrating federal jurisdiction. See McCracken v. Murphy, No. 04-3454, 2005 WL 995510, at *1 (3d Cir. Apr. 29, 2005). "Congress has the constitutional authority to define the jurisdiction of the lower federal courts, and, once the lines are drawn, limits upon

federal jurisdiction. . . must be neither disregarded nor evaded." Keene Corp. v. United States, 508 U.S. 200, 207 (1993) (citations and quotations omitted). The Court may review an action for the existence of jurisdiction, and to dismiss the complaint if jurisdiction is lacking. Fed.R.Civ.P. 12(h)(3).

The plaintiffs assert the Court has jurisdiction under the DJA. (Compl., at 4.) That assertion is in error, as the DJA "does not and cannot serve as an independent basis for federal jurisdiction." TIG Ins. Co. v. Reliable Research Co., 334 F.3d 630, 634 (7th Cir. 2003). See Neel v. Pippy, 247 F.Supp.2d 707, 712 n.2 (W.D. Pa. 2003) (stating same). The DJA enlarges the remedies available in federal courts, but does not expand the scope of the Court's jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (emphasis added). The operation of the DJA is procedural, and it does not provide independent grounds for federal subject matter jurisdiction. Id. The plaintiffs must look to another statute to provide a jurisdictional basis for the cause of action at issue.[3]

---

[3] There is a recognized basis for jurisdiction sometimes called a non-statutory review action, where a plaintiff seeks judicial review of the legality of the conduct of a federal executive branch officer in the absence of either a specific or general statutory review provision. See e.g., Chamber of Commerce of the United States v. Reich, 74 F.3d 1322, 1327 (D.C. Cir. 1996). That principle may be the basis of the observation by Justice Blackmun, concurring in Dalton, that judicial review would be available for a "claim, for example, that the President added a base to the . . . Commission's list in contravention of his statutory authority." Dalton, 511 U.S. at 477-78. We merely

BRAC does not provide the plaintiffs with an independent basis for a cause of action and jurisdiction, nor does it provide the Court with the power to exercise judicial review in this instance. The Supreme Court has recognized that:

> [w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.

Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984).

The only instance in which BRAC expressly provides for judicial review is in the limited context of objections as to the National Environmental Policy Act of 1969 ("NEPA"). 10 U.S.C. § 2909. Further, such review is only available if initiated within a certain time period. This Court cannot articulate the implication of this express provision better than Justice Souter stated in his concurrence in Dalton:

> This express provision for judicial review of certain NEPA claims within a narrow time frame supports the conclusion that the Act precludes judicial review of other matters, not simply because the Act fails to provide expressly for such review, but because Congress

---

note this principle, but observe that Dalton is the appropriate and controlling authority resolving the jurisdictional issue at this stage in the BRAC process. We also observe that although the concurrence by Justice Blackmun in Dalton suggested the availability of a "timely claim seeking direct relief from a procedural violation" committed by the Secretary or Commission, id. at 478. there is no such possibility here because this action was brought a mere three court days before the September 8, 2005 statutory deadline for submission to the President.

> surely would have prescribed similar time limits to preserve its considered schedules if review of other claims had been intended.

Id. at 483. Also, beyond the express language of BRAC itself,

> the text, structure, and purpose of the Act clearly manifest congressional intent to confine the base-closing selection process within a narrow time frame before inevitable political opposition to an individual base closing could become overwhelming, to ensure that the decisions be implemented promptly, and to limit acceptance or rejection to a package of base closings as a whole, for the sake of political feasibility. While no one aspect of the Act, standing alone, would suffice to overcome the strong presumption in favor of judicial review, this structure (combined with the Act's provision for Executive and congressional review, and its requirement of time-constrained judicial review of implementation under NEPA) can be understood no other way than as precluding judicial review of a base-closing decision under the scheme that Congress, out of its doleful experience, chose to enact.

Id. at 483-84. While this Court recognizes that amendments have been made to BRAC for the 2005 round of base closures and realignments, the statutory amendments do not change this Court's approach or conclusion. The current version of BRAC maintains the rigid step-by-step time schedule, temporary nature of the Commission, requirement for prompt implementation, and inability of the President and Congress to pick and choose parts of the recommendations to approve and disapprove. All these elements reinforce the conclusion that BRAC does not provide for judicial

review here.[4]

**CONCLUSION**

This Court finds that it lacks subject matter jurisdiction here. The Court will deny the plaintiffs' application and dismiss the complaint. An appropriate order and judgment will be issued.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

[4] The plaintiffs also assert jurisdiction under 28 U.S.C. § 1361, which states that the Court has jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But such relief is not available when the ultimate decision at issue lies — as it does here — within the discretion of the President. Dalton, 511 U.S. at 474. See Corus Group v. Int'l Trade Comm'n, 352 F.3d 1351, 1357 (Fed. Cir. 2003) (stating courts have no authority to review recommendation to President where President has complete discretion whether to act thereon).

The Court also notes a 1990 House Conference Report, which states that the actions taken pursuant to BRAC — particularly under 10 U.S.C. §§ 2903-2905 — are not to be subject to judicial review. H.R.Rep.No. 101-923, at 706 (1990), as reprinted in 1990 U.S.C.C.A.N. 3110, 3258.